**AMALGAMATED CLOTHING WORKERS OF AMERICA RANK AND FILE COMMITTEE et al., Appellants,**

v.

**AMALGAMATED CLOTHING WORKERS OF AMERICA, PHILADELPHIA, JOINT BOARD et al.**

No. 71–1862.

United States Court of Appeals, Third Circuit.

Argued Sep. 28, 1972.

Decided Jan. 12, 1973.

**1304**

Harry Lore, Philadelphia, Pa., for appellants.

Jerome L. Markovitz, Markovitz, Brooks & Cantor, Philadelphia, Pa., for appellee.

Before STALEY, VAN DUSEN and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

■ The appellants brought this suit in the district court[1] seeking, inter alia, to enjoin a scheduled nominating meeting[2] and to have certain election bylaws of the Amalgamated Clothing Workers of America, Philadelphia Joint Board ("the union"), declared to be in violation of the Labor-Management Reporting and Disclosure Act of 1959

---

1. Amalgamated Clothing Workers v. Amalgamated Clothing Workers, 334 F.Supp. 760 (E.D.Pa.1971).

2. On August 19, 1971, a nominating meeting was held during which appellants

allege Dominic Fulginiti was nominated. The meeting was adjourned and rescheduled for September 8, 1971. The appellants sought to permanently enjoin the latter.

("LMRDA"), 29 U.S.C. § 401 et seq.[3] Injunctive and declaratory relief was denied as was their motion for a stay pending appeal. Thereafter, a meeting was held during which one of the appellants, Dominic Fulginiti, was nominated for the office of business agent. In the ensuing election Fulginiti was successful.[4]

Here, the appellants set forth two arguments. First, they contend that the eligibility requirements contained in the union bylaws violate the equal rights guarantee of § 101(a)(1) of the LMRDA.[5] Second, appellants submit that certain rules governing the conduct of union elections are at odds with their First Amendment rights.[6] The resolution of these questions entails an examination of the relationship between enforcement of the union bill of rights and the Title IV election provision.[7]

Since the landmark decision of Calhoon v. Harvey, 379 U.S. 134, 85 S. Ct. 292, 13 L.Ed.2d 190 (1964), it has been clear that Title IV rights are not enforceable through post-election private suit.[8] In the instant case an election was held after the complaint was filed. Nevertheless, this is essentially a pre-election suit; appellants have applied for no judicial relief relative to the com-

3. The LMRDA, popularly known as the Landrum-Griffin Act, was the first instance of internal union affairs being federally regulated.

4. Fulginiti's success in the union election does not make this case moot. Besides the relief prayed for relative to the election, appellants sought declaratory relief. *See,* Colpo v. Highway Truck Drivers, 305 F.2d 362 (C.A.3), cert. denied, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962). For this reason, the motion to dismiss the appeal filed December 13, 1971, will be denied. However, insofar as this may be considered an appeal from the denial of a permanent injunction, the case is moot. Robins v. Rarback, 325 F.2d 929 (C.A.2, 1963), cert. denied, 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965).

5. LMRDA § 101(a)(1) reads as follows: "Sec. 101(a)(1) Equal Rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1).

6. The freedom of speech and assembly section of the LMRDA is § 101(a)(2). It provides:
"(2) Freedom of Speech and Assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2).

7. Title I violations of the LMRDA may be enforced by private suit. Section 102 of Title I provides:
"Sec. 102. Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located." 29 U.S.C. § 412. In contrast, with certain exceptions not relevant here, the violation of rights secured under Title IV are enforced through suit filed by the Secretary of Labor. 29 U.S.C. § 482.

8. The House Bill provided for private suits after exhaustion of internal remedies. The Senate version, however, prevailed, and no such private enforcement is permitted. U.S.Code Cong. & Admin. News, p. 2507 (1959).

pleted election. They request only that the union's bylaws be declared violative of the LMRDA.

■ Jurisdiction in pre-election suits must flow from Title I. *Calhoon, supra.* The Court emphasized this point in *Calhoon,* holding that federal courts do not have jurisdiction to hear pre-election private suits under § 102 predicated upon Title IV rights. However, merely because a particular violation is covered by both Title I and Title IV, a private pre-election suit under § 102 is not barred. *DePew v. Edmiston,* 386 F.2d 710 (C.A.3, 1967).

It has been noted that the rather broad language in the *Calhoon* decision could be considered to have precluded Title I suits related to election matters. Union Elections and the LMRDA, 81 Yale L.J. 407, 546–547 (1972). However, on its facts, *Calhoon* did not prohibit Title I suits in the election area. And, in fact, suits under § 102 brought before an election to enforce Title I rights which were intrinsically bound up with the election process have been permitted. *Semancik v. United Mine Workers of America District No. 5,* 466 F.2d 144 (C.A.3 1972); *DePew, supra;* Sheridan

v. United Brotherhood of Carpenters, Local 626, 191 F.Supp. 347 (D.Del.1961). But once the election has been completed, the outcome cannot be affected by Title I suit. The judicial and administrative remedy of Title IV is exclusive. McDonough v. Local 825, International Union of Operating Engineers, 470 F.2d 261 (C.A.3, 1972); McGuire v. Grand International Division of Brothers of Locomotive Engineers, 426 F.2d 504, 508 (C.A.6 1970); Kolmonen v. International Hod Carriers, 215 F.Supp. 703 (W.D. Mich.1963); Myers v. International Union of Operating Engineers, 40 L.C. ¶ 66,436 (1960).

■ If a substantial claim is asserted under Title I, the federal court has jurisdiction irrespective of the ultimate decision on the merits. Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152, 156 (C.A.3 1962); Hughes v. Local 11 of International Ass'n of Bridge Workers, 287 F.2d 810, 814 (C. A.3), cert. denied, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961). Here appellants urge claims under Title I with respect to Article V § 3, Article XII § 1, and Article XIII § 4, of the union bylaws which set forth eligibility requirements.[9] Those requirements pro-

---

9. The pertinent sections of the bylaws read as follows:
Article V.
"*Section 3.* No person shall be eligible to election as a Joint Board delegate unless:
(a) He has been a member in good standing of the local union which he seeks to represent for at least two years preceding the date of his nomination, or, if such local union has been chartered for less than two years, then from the date of its charter; and
(b) For at least two years preceding the date of his nomination he has been employed or seeking employment in an occupation within the jurisdiction of his local union, or is employed by his local union, or by an organization with which it is affiliated; and
(c) No person who has been an employer, a foreman, a forewoman or who, acting on behalf of an employer, has had the right to hire or fire, shall be eligible for election as a Joint Board delegate for the period of five

years following the date upon which he last held such a position."
Article XII.
"*Section 1.* That in order for a candidate to be nominated he must have the vote of at least 25% of those present."
Article XIII.
"*Section 4.* A Business Agent, before being qualified to be a candidate for office, must first be a member of the affiliated local union which he seeks to represent, for at least two years prior to his nomination. His nomination must be made, and seconded by at least 25% of those members present and eligible to vote at a meeting of the affiliated local union called specifically for that purpose. After receiving the nomination, the Board of Directors shall examine the candidate as to his qualifications and said candidate must receive the approval of the Board of Directors before his name may be placed upon the ballot."

vide that no member shall be eligible for various union offices unless he has been a member in good standing of a local union for at least two years prior to his nomination. Further, the nomination must be made by a vote of at least 25 percent of those present.

■ *Calhoon* held that this court does not have jurisdiction under Title I to decide the validity of eligibility requirements that are uniformly applied.[10]

" * * * Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards. And the equal-rights language of § 101(a)(1) would have to be stretched far beyond its normal meaning to hold that it guarantees members not just a right to 'nominate candidates,' but a right to nominate anyone, without regard to valid union rules." *Calhoon*, supra, 379 U.S. at 138, 85 S.Ct. at 295.

Appellants advance the very argument that the Calhoon court rejected. Their contentions with regard to eligibility requirements cannot be tested by a suit under Title I. The Title IV remedy is proper in the case of these bylaws. *See*, Wirtz v. Hotel Employees, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968); Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 88 S.Ct. 643, 19 L. Ed.2d 705 (1968).

■ Appellants assert that their rights to freedom of speech and assembly are violated by Article XII §§ 2, 5, 6, and 7[11] of the bylaws. Section 2 merely provides the Board of Directors with supervisory control over elections. The court is unable to ascertain how the mere designation of election officials which Title IV obviously contemplates raises a Title I question. See 29 U.S.C. § 481(e). We are persuaded that it does not. But we think the other three sections do raise Title I questions.

Section 5 of the bylaws forbids candidates from attending any meeting at which free refreshments are served. Certainly the validity of this restriction on freedom of assembly falls within the purview of § 101(a)(2). The free speech implication of the § 6 requirement that campaign literature be submitted to the Board of Directors before distribution is obvious. *See*, International Brotherhood of Boilermakers v. Rafferty, 348 F.2d 307 (C.A.9 1965); Farowitz v. Associated Musicians of Greater New York, Local 802, 330 F.2d 999 (C.A.2, 1964); Salzhandler v. Caputo, 316 F.2d 445 (C. A.2), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963). The § 7 prohibition of shop collection raises issues which fall within the scope of the Title I freedom of speech and assembly

---

10. If union officers were found to be manipulating adjournments and thereby making it difficult for the supporters of a particular candidate to meet the 25 percent requirement, a Title I suit might well be proper.

11. Pertinent parts of Article XII of the bylaws are as follows:

"*Section 2.* That the Board of Directors shall supervise all nominations and meetings and elections under the direction of the President and Secretary of the Joint Board."

"*Section 5.* That no candidate running for office in the Philadelphia Joint Board or affiliated local union shall be a party to or attend any gathering where refreshments are served free. A member's ability and record should be the only basis upon which he seeks to be elected, and it is detrimental and against the dignity of the office to spend money to finance a campaign to be elected. Any candidate found guilty of infraction of this ruling will have his name stricken from the ballot and his candidacy nullified."

"*Section 6.* Any leaflet, letter or card printed for distribution for campaign purposes must first be presented to the Board of Directors."

"*Section 7.* No collection shall be made in any shop for campaign purposes by any candidate or supporter of any candidate. The practice of making collections for flowers or for any other display shall come under the rules as provided by the Joint Board in regards to collections in the shops."

provision. *See*, NLRB v. United Steelworkers of America, 357 U.S. 357, 78 S. Ct. 1268, 2 L.Ed.2d 1383 (1958).

■ Nevertheless, at this stage we find it unnecessary to decide the merits of these questions. Section 101(a)(4) LMRDA provides that a union member bringing a suit for vindication of Title I rights "may be required to exhaust reasonable hearing procedures * * * within such organization." 29 U.S.C. § 411(a)(4). Requirement of internal exhaustion is discretionary. Detroy v. American Guild of Variety Artists, 286 F.2d 75 (C.A.2), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). Exhaustion has not been demanded when plaintiffs will suffer irreparable harm in the exercise of their LMRDA rights, Cefalo v. International Union of District 50 United Mine Workers of America, 311 F.Supp. 946, 953–954 (D.D.C.1970); Sheridan v. Liquor Salesmen's Union, Local 2, 303 F.Supp. 999 (S.D.N.Y. 1969); when resort to the internal appeals structure would be futile, Steib v. New Orleans Clerks & Checkers, Local No. 1497, 436 F.2d 1101 (C.A.5, 1971); or when the union has consistently taken a position opposed to plaintiff and shows no inclination to change its views, Farowitz v. Associated Musicians of Greater New York, Local 802, supra.

■ In the instant case, there has been no showing of irreparable harm, futility of internal appeal, or a fixed union position. The appellants have presented no evidence that they ever challenged the objectionable bylaws before instituting this suit. Article XXIV of the bylaws provides what appears to be a reasonable procedure for amendment.[12] Further, there is no evidence

that the union bylaws chill free speech in union elections. For these reasons this is an appropriate case to demand internal exhaustion. Harris v. International Longshoremen's Association, Local No. 1291, 321 F.2d 801 (C.A.3 1963).

This case is distinguishable from *Semancik*, supra, where we refused to demand exhaustion in affirming a permanent injunction against discipline of union members under a specific provision of the union's constitution. In that case, there was considerable evidence that free speech was being inhibited and that internal appeals would be futile due to the union's constant and clear opposition to the plaintiffs.

The motion of appellee to dismiss will be denied, and the order of the district court will be affirmed.

12. Article XXIV of the bylaws provides:
"*Section 1.* An amendment to this Constitution and Bylaws may be proposed by any affiliated local union, or any Joint Board delegate by filing a copy thereof with the Secretary of the Joint Board. Such proposed amendment shall then be submitted to the Board of Directors for its action and recommendation. Such proposed amendment shall then be submitted to the next meeting of the Joint Board and shall become effective when approved by the affirmative vote of not less than two-thirds (⅔) of the Joint Board Delegates, who vote on the amendment at a meeting called for that purpose, and a majority of the affiliated local unions."