Manuel RIVERA, Milagros Matos, Aides Cordon, Melida Umonzor, Paulina De-Leon, Idalia Gonzalez, George Yunda, and Janzinto Suarez, Plaintiffs,

and

Welfare Fund of Capmakers Local 2H; Retirement Fund of the Cloth, Hat and Cap Industry of New York: and Vacation Fund of Cloth, Hat and Cap Industry of New York, Rule 19 Plaintiffs,

v.

Michael FEINSTEIN, individually and as President of Capmakers Union Local 2H, ACTWU; Capmakers Local 2H, ACTWU; Israel Rosenzweig; Joseph Horn, and Barry Tannenbaum, Defendants.

No. 85 Civ. 8852 (RWS).

United States District Court,
S.D. New York.

April 28, 1986.

Clifton & Schwartz, New York City, for plaintiffs; Arthur Z. Schwartz, of counsel.

Leaf Sternklar & Drogin, New York City, for defendants; Ira Drogin, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Manuel Rivera ("Rivera"), Idalia Gonzalez ("Gonzalez"), and several other members of Capmakers Local 2H ("Local 2H"), Amalgamated Clothing and Textile Workers Union ("ACTWU") have moved by order to show cause returnable April 11, 1986 for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P. restraining defendant Michael Feinstein ("Feinstein"), president of Local 2H and several members of the Executive Board of Local 2H from conducting a disciplinary hearing on charges against Gonzalez, and from preventing Rivera from obtaining a key to the office of the Welfare, Retirement & Vacation Funds of Local 2H ("the Funds"), and for leave to file a supplemental complaint pursuant to Rule 15, Fed.R.Civ.P. For the reasons set forth below, the motion for preliminary relief is denied, and leave to serve a supplemental complaint is granted.

### Prior Proceedings

The initial complaint in this action, filed on November 8, 1985, contained six claims for relief arising from an intra-union dispute concerning Rivera's position as Executive Director of the Funds. The complaint alleged that defendant Feinstein and others, through repeated harassment of Rivera which included removing him from the private office which he had occupied for several years, breached their fiduciary duties as union officers, breached Local 2H's sublease from the Funds, tortiously interfered with Rivera's employment contract with the Funds, and violated his rights to free expression granted by section 101(a)(2) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2) and disciplined him for his exercise of these rights in violation of section 609 of the LMRDA, 29 U.S.C. § 529.

A hearing on the show cause order was held on November 15, 1985, which resulted in the consent of the parties to Rivera's return to his office pending the Fund's determination of his employment status. Although the court determined that the Board of Trustees of the Funds should decide the issues surrounding Rivera's competency in the administration of the Funds, the three union-designated trustees and three employer-designated trustees became deadlocked on these issues and the controversy was submitted to binding arbitration, pursuant to section 302 of the Taft-Hartley Act. These proceedings are currently scheduled for May 5–6, 1986.

On April 3, 1986, plaintiffs brought a second order to show cause seeking a preliminary injunction and leave to serve a supplemental complaint pursuant to Rule 15, Fed.R.Civ.P. A hearing on this motion was held on April 11, 1986, in which the plaintiffs requested an injunction preventing a disciplinary hearing on charges against Gonzalez, and permitting Rivera to have a key to the external door of the office of the Funds, and permission to add two defendants and two substantive claims to the initial complaint.

### Facts

This request for a preliminary injunction arises in the context of intra-union political struggle inside local 2H. Rivera, a member of Local 2H and a Fund employee charged with administering contributions to and disbursements from these Funds, made an unsuccessful bid for the presidency of Local 2H, losing to Feinstein in September, 1985, the first election held by the Local since the lifting of the second of two trusteeships imposed by the International ACTWU between December, 1982 and November, 1985. According to Rivera and the

Local 2H members who are plaintiffs in this action, Feinstein has conducted a campaign to suppress criticism of the incumbent Local 2H leadership and criticism of his alleged misappropriation of Local 2H funds. According to Feinstein, Rivera has embarked on a campaign to destroy the union since his loss of the September, 1985 election by filing numerous lawsuits against Feinstein and others designed to harm his credibility as union president and launch Rivera's renewed drive for the presidency.

This motion for preliminary relief concerns three intra-union disputes between the incumbent union leadership and a recently formed "dissent group" within the union. According to Rivera, subsequent to the filing of this action, certain members of Local 2H formed a "rank-and-file caucus" using the name "Obreros de Gorras Para Union Democratica" (in English, "Capmakers for a Democratic Union" or "CDU"), which published a newsletter in March, 1986. The newsletter, distributed to the members of Local 2H, contained four articles concerning an investigation of the September, 1985 election, allegations that Feinstein abused union funds, a discussion of the November 15, 1985 proceedings before this court, and a discussion of the events at the Local 2H meeting on December 4, 1985 which form the basis of the seventh claim for relief in the proposed supplemental complaint. The close of the newsletter instructed members: "To Join Capmakers for a Democratic Union Call INDAGLIA GONZALEZ" at the telephone number supplied.

At the monthly Executive Board Meeting of Local 2H on March 26, 1986 the Executive Board asked Gonzalez, a union officer, about the newsletter. She disclaimed any knowledge of the Capmakers for a Democratic Union. According to the affidavit of Jack Glass ("Glass"), an Executive Board Member of Local 2H and a Funds Trustee, Gonzalez denied participating in or sponsoring the newsletter, while simultaneously warning the Board of more newsletters to follow. According to Glass, this conduct led him to believe that she was engaging in

"dual unionism." On March 27, 1986, Glass filed charges against Gonzalez with Luz Rivera, secretary treasurer of Local 2H claiming that Gonzalez was engaging in dual unionism by urging Local 2H members to join an organization "believed designed to destroy Local 2H," by (1) making distorted and libelous charges against a fellow union officer, (2) creating a false impression of corruption within the union leadership and by (3) misrepresenting the outcome of the November, 1985 preliminary injunctive proceedings before this court. Gonzalez has not filed an affidavit in this action presenting her version of the March 26, 1985 meeting.

Luz Rivera then notified Gonzalez by letter of March 27, 1986 that a hearing before the Executive Board on those charges would be held on April 10, 1986. On April 9, 1986, Glass withdrew the latter two charges from his complaint against Gonzalez, leaving only the charge of violating her oath of union office by engaging in dual unionism. At Gonzalez' request, this hearing was postponed until April 22, 1986 to permit Gonzalez to petition the union international to take jurisdiction over the dispute.

The second set of events underlying the motion for injunctive relief concerns the identical issues presented at the November 15, 1985 preliminary injunctive hearing, namely Rivera's access to his place of employment. According to Rivera's affidavit, after his return to his private office, Feinstein changed the locks to the main door of the suite shared by the Funds and the Local 2H offices, preventing Rivera from entering the offices outside normal working hours, or entering when someone with a key is not present. Rivera has produced a November 27, 1985 letter from Israel Rosenberg, an employer-designated trustee, instructing Feinstein to give Rivera keys to the door of the Fund offices as well as keys to his private office. Rivera contends that this blocking of access to his administrative duties has caused a backlog of work and is part of Feinstein's effort to

show him as incompetent in the performance of his administration of the Funds.

The final episode at issue concerns the allegations in the seventh cause of action in Rivera's proposed supplemental complaint. According to Rivera, Feinstein's conduct at the December 4, 1985 Local 2H membership meeting was an intentional and reckless violation of the rights of Local 2H members to participate and vote in union affairs. Rivera contends that he advised Feinstein, who chaired the meeting, that he would make five motions from the meeting floor and requested recognition. Although Rivera handed him written copies of his motions for discussion and vote, Feinstein did not permit debate on these motions but moved to discuss his own motions. Furthermore, he conducted discussion and vote on these motions in English, ignoring the Spanish speaking members present, and did not count opposition to these motions but deemed them "carried."

### Discussion

In order to obtain injunctive relief for Rivera and Gonzalez, the plaintiff members of Local 2H must demonstrate (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly toward the party seeking relief. *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir.1979), *citing Jackson Dairy Inc. v. H.P. Hood & Sons Inc.*, 596 F.2d 70 (2d Cir.1979). On the facts currently before the court, the burden of demonstrating irreparable injury has not been met.

### Gonzalez

■ Plaintiff members of Local 2H claim that the lodging of charges and the imminent disciplinary hearing against Gonzalez violate the free expression rights granted to union members by Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2). According to Rivera, the charges were designed to retaliate for the presence of Gonzalez' name on the newsletter, and attempt to suppress the news of the dissenting fac-

tion of Local 2H—Capmakers for a Democratic Union ("CDU"). Rivera believes that this repression is part of Feinstein's larger campaign to undermine support for CDU, which includes harassing Rivera in his administration of the Funds and preventing Rivera's motions from reaching the floor at Local 2H meetings. Feinstein contends that it was Gonzalez' refusal to acknowledge her role in CDU and her refusal to explain the nature of CDU and the newsletter which prompted the charges and the need for a hearing. According to Feinstein, the Executive Board of Local 2H is therefore entitled to determine the nature of what Rivera terms a "rank-and-file caucus" to rule out the possibility that its officers or members are engaging in dual unionism.

It is well settled law in this circuit that the statements contained in the newsletter which concern internal union affairs and which criticize union officers are protected by section 101(a)(2), even if these statements are defamatory or malicious. *Petramale v. Local No. 17 of Laborers International Union of North America*, 736 F.2d 13 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984); *Cole v. Hall*, 462 F.2d 777 (2d Cir.1972), and section 609 of the LMRDA provides that a union may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions [of the Act]." 29 U.S.C. § 529.

Rivera contends that the charges and disciplinary hearings to be held constitute discipline and violate sections 101(a)(2) and 609 of the LMRDA and cast a chill on Gonzalez' exercise of free speech rights, establishing irreparable injury. However, the majority of cases cited to support the restraint of these disciplinary hearings involve reversals of fines, expulsion or suspension of union members imposed as retaliation for the exercise of Title I rights. *See Rollison v. Hotel, Motel, Restaurant, and Construction Camp Employees*, 677 F.2d 741 (9th Cir.1982) (suspension, fine and punishment); *Giordani v. Upholsterers In-*

*ternational Union of North America,* 403 F.2d 85 (2d Cir.1968) (expulsion); *Salzhandler v. Caputo,* 316 F.2d 445 (2d Cir.1963) (suspension from participation in union affairs); *Clarke v. District Council, United Brotherhood of Carpenters and Joiners,* No. 81 Civ. 5083 (S.D.N.Y.1982) (fine); *Pearl v. Tarantola,* 361 F.Supp. 288 (S.D. N.Y.1973) (expulsion).

Feinstein contends that the leveling of charges and hearing before the Executive Board of Local 2H is neither "discipline" within the meaning of Section 609 nor does it give rise to irreparable injury to speech rights, because it is merely an investigation of Gonzalez' activities and not punishment for the exercise of those rights. Under the circumstances of this case, this court agrees.

Counsel for Rivera has produced only one case, *Sheridan v. Liquor Salesmen's Union,* 303 F.Supp. 999 (S.D.N.Y.1969), in which a court has enjoined the conducting of a disciplinary hearing prior to its occurrence and determined that the person charged was not required to first exhaust intra-union remedies by responding to the charges put forth. In *Sheridan,* union members who had published an article in a dissident newsletter were charged with fostering dissention, reflecting discredit on the union and injuring the interests of fellow union members. Permanently enjoining these hearings, the court observed:

> In the instant case, the protection of 29 U.S.C. § 411(a)(2) as far as plaintiffs' article is concerned is beyond question, as seen above. Therefore, little exertion of judicial resources is required. The court would not benefit from union tribunals passing upon the problem; in fact, the union remedy could be no different that the court's to be acceptable, i.e. the barring of prosecution of these charges. The threatened injury to plaintiffs is immediate and probably of such a nature that damages would be inadequate relief. Plaintiffs are to be candidates for election to union office in the near future ... If they are publicly fined, their campaigns could be immeasurably harmed.

No monetary damages could be fixed to measure the harm of election scandals. *Id.* at 1005.

The court framed its holding to limit the use of such injunctions to instances "where projective candidates for union elections face union disciplinary hearings based on charges clearly void under 29 U.S.C. § 411(a)(2)" and did not require the exhaustion of union remedies for that reason. *Id.* at 1006.

The *Sheridan* case is therefore inapposite to the one at bar for several reasons. First, this court has no evidence before it which indicates that these charges are clearly void on their face, as defendants did express a colorable concern, based on Gonzalez' own evasiveness, that the organizers of CDU were engaging in dual unionism, a concern which union officials have an institutional right to express pursuant to 29 U.S.C. § 411(a)(2) ("*Provided* that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution ..."). Second, Gonzalez has not submitted an affidavit which states the nature or purpose of CDU or which alleges an irreparable injury or chill to her expression rights, and she has not alleged that the pendency of charges or the imminence of the hearing is inhibiting a further publication of the newsletter. Finally, the representations of opposing counsel at the April 11, 1986 hearing indicate that requiring the exhaustion of internal union remedies in this situation would be more than fruitful. All but one of the charges against Gonzalez was voluntarily withdrawn on April 9, 1986, the Executive Board of Local 2H voluntarily postponed the hearing date to await the ACTWU International's decision on whether to take jurisdiction over the hearing, and Feinstein indicated in open court on April 11, 1986 that Gonzalez could avoid all charges if she explained, as Rivera has done in his affidavit, that CDU is a rank-and-file dissent group within the union and is not an exercise in dual unionism.

Where there is no irreparable injury present, and internal avenues of union dispute resolution have some hope of success, several courts have declined to enjoin disciplinary proceedings and have required exhaustion of reasonable internal hearing procedures pursuant to 29 U.S.C. § 411(a)(4). *Buzzard v. Local Lodge 1040 Intl. Ass'n. of Machinists and Aerospace Workers,* 480 F.2d 35, 42 (9th Cir.1973) (refusal to enjoin discipline for a picket, distinguishing the "exceptional circumstances" in *Sheridan*); *Amalgamated Clothing Workers Rank and File Committee v. Amalgamated Clothing Workers Joint Board,* 473 F.2d 1303, 1308 (3d Cir. 1973) (Requiring the exhaustion of internal remedies before relief for an asserted § 101(a)(2) violation is granted). This court will therefore require such exhaustion in its discretion. *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir. 1961).

**Rivera**

▮ The same arguments hold true for the issue of Rivera's key to the union offices. Rivera has not even alleged an irreparable injury which might result from his inability to have free access to the suite of union and fund offices, a defect fatal to his request for injunctive relief. *Bell & Howell: Mamiya Co. v. Masel Supply Corp.,* 719 F.2d 42, 45 (2d Cir.1983) (A showing of irreparable injury is perhaps the single most important prerequisite for the issuance of a preliminary injunction). While this court understands Rivera's concern that reduced after-hour access to the Fund offices may buttress his opponent's charges of his incompetence in administering to the Funds, this contention merely underscores the appropriateness of permitting Arbitrator Glinsman to deal with *all* of the issues surrounding Rivera's continued employment with the funds, as counsel for Feinstein suggested at the preliminary injunctive hearing and his April 14, 1986 letter to the court.

**Motion to Amend**

Rivera and plaintiff members of Local 2H also seek leave to amend their complaint to add Ira Drogin, attorney for Feinstein and Local 2H in this action, and Jack Glass, an Executive Board member of Local 2H and a Fund Trustee as defendants, and to add two claims, one stemming from the aforementioned incidents at the December 4, 1985 Local 2H membership meeting, and the other arising from the charges brought against Gonzalez. Rule 15, Fed.R. Civ.P. provides that leave to amend the complaint should be "freely given" when justice so requires. In the landmark Rule 15 decision of *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) the Supreme Court set the standards for the exercise of the courts' discretion in granting leave to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motives on the part of the movant, repeated failure to cure, deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. at 230.

As neither Feinstein nor the other defendants herein have alleged any basis for denying leave to amend, permission to file an amended complaint is granted.

To summarize, plaintiffs have failed to establish that either Rivera or Gonzalez will suffer irreparable injury if the union Executive Board is not restrained from conducting a disciplinary hearing on the charges levied against Gonzalez, and is not forced to give Rivera a key to the suite of the Funds and Local 2H offices. The motion for a preliminary injunction is denied, and leave to amend the complaint is granted.

IT IS SO ORDERED.