Robert C. BRADLEY, Appellant,

v.

AMERICAN POSTAL WORKERS UN-
ION, AFL–CIO; Robert D. Kessler, in-
dividually, and in his official capacity
as National Business Agent, American
Postal Workers Union, AFL–CIO; Moe
Biller, individually and in his official
capacity as President of the American
Postal Workers Union, AFL–CIO; Dan-
iel E. Petty, individually and in his offi-
cial capacity as President of the Great-
er Kansas City Metro Area Local 67,
American Postal Workers Union, AFL–
CIO; Rosemary Gilio, individually; Ap-
pellees,

Lynn Martin, Honorable, in her official
capacity as Secretary of Labor, United
States Department of Labor, Defen-
dants.

No. 91–2260.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1992.

Decided April 23, 1992.

Rehearing and Rehearing En Banc
Denied June 9, 1992.

Larry Delano Coleman, Kansas City,
Mo., argued, for appellant.

Susan L. Carter, Washington, D.C., ar-
gued (Susan L. Carter, Washington, D.C.,
on brief for appellees American Postal
Workers Union, AFL–CIO, Robert D. Kes-
sler and Moe Biller; James G. Walsh, Jr.,
Kansas City, Mo., on brief for appellees
Daniel E. Petty and Rosemary Gilio), for
appellees.

Before WOLLMAN and BEAM, Circuit
Judges, and VAN SICKLE,* Senior
District Judge.

WOLLMAN, Circuit Judge.

Robert C. Bradley appeals from the dis-
trict court's grant of summary judgment in
favor of the Secretary of Labor. We re-
mand to the district court with instructions
to dismiss for lack of jurisdiction.

I.

Local 67 of the American Postal Workers
Union is located in Kansas City, Missouri.
After alleging election improprieties in Lo-
cal 67's 1985 election, Bradley succeeded in

* The HONORABLE BRUCE M. VAN SICKLE,
United States Senior District Judge for the Dis-
trict of North Dakota, sitting by designation.

obtaining a supervised election, which was held in 1986. He was elected president in that election. In 1988, Bradley ran for reelection in an unsupervised election. He lost to Daniel Petty by a narrow margin.

After his loss to Petty, Bradley demanded and received a recount, which did not alter the election result. Bradley then requested that the local Election Committee re-run the election. The chairperson of the committee denied his request without consulting the committee. Bradley wrote to the National Election Appeals Committee, again demanding a re-run of the election. After he wrote this letter, but before he had received a reply, the local Election Committee overturned the chairperson's denial, declared that certain provisions of the union's constitution had been either violated or overlooked, and called for a new election. Bradley then withdrew the appeal he had lodged with the National Committee.

The next day, Daniel Petty filed an appeal with the National Committee, protesting the action of the local Election Committee. He filed the appeal without complying with local union rules, which require first filing an appeal with the local committee. Petty, along with the national union's Business Agent, wrote several letters to the National Election Appeals Committee opposing Bradley's appeal. A member of the National Committee set aside the local committee's decision to hold a re-run election. After investigation of Bradley's charges, the National Committee instructed the local committee to tabulate thirty-two additional ballots, add them to the previous results, and certify the election.

After the National Committee overturned the local committee's decision to re-run the election, but before it issued the instructions about the additional ballots, Bradley filed a timely challenge to the election with the Secretary of Labor. The Sec-

retary's Area Director determined that thirty-four additional ballots[1] should have been tabulated. The Secretary overruled this determination, dismissed Bradley's complaint, and refused to order a new election. Bradley then filed a complaint in federal district court against Petty, the chairperson of the local election committee, the national union, the national union's Business Agent, and the member of the National Committee who had denied his appeal.[2] Bradley alleged violation of his rights as guaranteed by Title I of the Labor–Management Reporting and Disclosure Act. The district court granted summary judgment in favor of the defendants.

## II.

Congress passed the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA or Act) in response to "concern with widespread abuses of power by union leadership." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 536, 104 S.Ct. 2557, 2563, 81 L.Ed.2d 457 (1984). Title I of the Act is the union worker's "Bill of Rights" and guarantees each union member the right to vote and participate in union decisions, the right to freely meet with and express views to others, and protection from improper disciplinary action. 29 U.S.C. § 411. These guarantees may be enforced by bringing a private civil action in federal court. 29 U.S.C. § 412. Title IV regulates elections for union offices. 29 U.S.C. § 481. The exclusive remedy for a violation of Title IV is a civil action brought by the Secretary of Labor to enforce or set aside an election. 29 U.S.C. §§ 482, 483. It is this exclusivity provision that we examine in this appeal.

The Supreme Court has stated that "there is nothing in the legislative history [of the LMRDA] suggesting that Congress intended to foreclose all access to federal courts under Title I during an election."

---

1. This number includes the thirty-two ballots the National Committee instructed the local committee to open and tabulate. Even with these ballots, however, Bradley had two fewer votes than Petty.

2. Bradley also named the Secretary as a defendant, alleging election improprieties and requesting a new election. After the Secretary filed a supplemental statement of reasons for denying a new election, the district court granted summary judgment in favor of the Secretary. Bradley has dropped his appeal of that issue.

*Local No. 82, Furniture & Piano Moving v. Crowley,* 467 U.S. at 543, 104 S.Ct. at 2567. The Court recognized, however, that while a court may have jurisdiction over a Title I action brought during the time that an election is pending, "the exclusivity provision included in ... Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed." *Id.* at 541, 104 S.Ct. at 2566. The Court noted that "[t]he exclusivity provision of Title IV may not bar postelection relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted." *Id.* at 541 n. 16, 104 S.Ct. at 2566 n. 16 (citing *Ross v. International Bhd. of Elec. Workers,* 513 F.2d 840 (9th Cir.1975) (court had jurisdiction over post-election claim for tortious interference with business opportunity which would not interfere with operation of the local union pursuant to the election); *Amalgamated Clothing Workers Rank & File Comm. v. Amalgamated Clothing Workers of Am.,* 473 F.2d 1303 (3d Cir.1973) (court had jurisdiction over post-election suit alleging that nomination procedures violated Title I, but suit was dismissed for failure to exhaust internal union remedies)).

■ If a lawsuit alleges Title I violations, but is, in effect, a Title IV suit, the suit has been improperly brought, and the court has no jurisdiction over the action.[3] *See Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); *O'Doherty v. Brotherhood of Ry., Airline & S.S. Clerks,* 618 F.2d 484, 486 (8th Cir.1980) (no claim for relief under Title I if complaint raises an issue governed "predominantly" by Title IV); *McNail v. Amalgamated Meat Cutters,* 549 F.2d 538 (8th Cir.1977) (no jurisdiction under Title I by the mere assertion of such rights if Title IV rights are "essentially" involved); *Driscoll v. International Union of Operating Eng'rs,*

*Local 139,* 484 F.2d 682, 687 (7th Cir.1973) (existence of jurisdiction depends on a close analysis of the basic thrust of the complaint, not merely acceptance of allegations of Title I violations), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

Here, as in *Calhoon v. Harvey,* "[j]urisdiction of the District Court under ... Title I depends entirely upon whether [Bradley's] complaint showed a violation of [Title I], for ... jurisdiction [cannot] be upheld by reliance in whole or in part on allegations which in substance charge a breach of Title IV rights." 379 U.S. at 138. Congress intended "to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts." *Id.* 379 U.S. at 140, 85 S.Ct. at 296.

■ Bradley contends that the defendants tried to quash the local Election Committee's plan to re-run the election and thus deprived him of the rights of participation, a fair election, and free speech. He also contends that these actions were taken in retaliation for his acts that resulted in the 1986 supervised election. The defendants respond that the actions of which Bradley complains (meetings, letters, other communications, and decisions adverse to Bradley) are merely part of the normal appeals process and are thus governed by Title IV.

Bradley's claims that he was deprived of the right to a fair election and the right of participation are clearly governed by Title IV. *See* 29 U.S.C. § 481 (setting out requirements for election procedures). Bradley's claims that he was deprived of his right of free speech and that he was retaliated against for his activities in producing the 1986 supervised election, while set out in terms of Title I, are, in reality, Title IV claims. As set out above, post-election con-

---

**3.** Federal courts are courts of limited jurisdiction, and the "threshold requirement in every federal case is jurisdiction." *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987); *see also Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir. 1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square*

*Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990). "Lack of jurisdiction of a federal trial court touching the subject matter of litigation cannot be ... ignored by a federal appellate court." *Kern v. Standard Oil Co.,* 228 F.2d 699, 701 (8th Cir. 1956).

duct is, with few exceptions, governed exclusively by Title IV. We do not believe that the conduct of which Bradley complains falls within any of the exceptions recognized by this or other courts. Bradley contends that the letters written between the national union and the local union, along with the efforts of the Business Agent and the National Committee member to thwart his appeal, deprived him of his Title I rights. We agree with defendants that these activities were part of the normal appeals process. Any defect in that process is to be remedied only through Title IV. Thus, Bradley's only hope of a remedy rested with the Secretary, who found no fault with the election and dismissed Bradley's complaint.

Because the district court lacked jurisdiction over Bradley's complaint, the case is remanded to the district court with instructions to dismiss the action.