James R. **FIORI**, Plaintiff,

v.

**TRUCK DRIVERS UNION LOCAL 170, Defendant.**

**No. CIV.A.97–40159–NMG.**

United States District Court, D. Massachusetts.

Jan. 8, 2001.

Charles J. Brucato, Jr., Consigli, Brucato and Villani, P.C., Milford, MA, for James R. Fiori.

Timothy P. Wickstrom, Tashjian, Simsarian & Wickstrom, Worcester, MA, Richard J. Rafferty, Jr., Avis, Eden, Tolins & Rafferty, Worcester, MA, Raymond J. Reed, Reed & Reed, Worcester, MA, for Truck Drivers, Local 170.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, James R. Fiori ("Fiori"), brought this action against defendant, Truck Drivers Local 170 ("Local 170"), alleging violations of the Labor–Management Relations Act, 29 U.S.C. § 141 *et seq.*, and the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.*, and seeking injunctive relief. Fiori has since amended his complaint, dropping his request for injunctive relief and adding claims for slander and violations of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* ("the Amended Complaint"). Pending before this Court is Local 170's motion to dismiss part of the Amended Complaint or, alternatively, for partial summary judgment (Docket No. 28).

### I. *Background*

In May of 1988, Fiori was employed by Tresca Brothers Sand and Gravel ("Tresca Brothers") and was also a member of Local 170 which is affiliated with the International Brotherhood of Teamsters ("IBT"). On or about May 2, 1991, he was injured while working at Tresca Brothers and be-

gan receiving workers' compensation benefits. A few days later, Local 170 initiated a strike against Tresca that lasted for over three years. During that entire period, Fiori participated in the strike. With the approval of then IBT General President, William J. McCarthy, he received weekly strike benefits from Local 170 during the strike despite also receiving his workers' compensation benefits from Tresca Brothers.

In January of 1995, Fiori became Vice President of Local 170. Soon afterwards, political divisions arose among the management of Local 170 with respect to the IBT presidential election. Fiori supported James R. Hoffa for IBT General President, while other Local 170 officials supported the incumbent, Ronald Carey.

At about that time, Fiori's alleged political opponents within Local 170 conducted an investigation into his so-called "double-dipping", i.e. his receipt of strike benefits while also receiving workers' compensation. On February 3, 1997, Secretary-Treasurer of Local 170, Richard Foley ("Foley"), filed charges against Fiori for wrongfully receiving strike benefits in violation of the IBT Constitution, and shortly thereafter Fiori was removed as Vice President without a hearing.

Following a subsequent hearing on March 1, 1997, the Executive Board of Local 170 found Fiori guilty of the charges against him. The Executive Board of Joint Council 10 ("Joint Council 10") affirmed that decision on appeal, finding that Fiori had violated Article XII, § 15(a) of the IBT Constitution and ordered, in addition, that Fiori make restitution to Local 170 of $26,345 (the amount of strike benefits he had received). Fiori then appealed that decision to the IBT General Executive Board.

On July 21, 1997, Fiori was suspended from Local 170 for failing to make the ordered payments. However, two months later, he was reinstated as a member and Vice President of Local 170 by the IBT General Executive Board, pending resolution of his appeal. The IBT General Executive Board initially affirmed the determinations by Local 170 and Joint Council 10 that Fiori was ineligible for strike benefits during the Tresca Brothers strike, but reversed that affirmance on July 30, 1999, thus nullifying the findings of Local 170 and Joint Council 10 and revoking the obligation to repay any strike benefits received.

In November, 1997, Fiori ran for Business Agent of Local 170 and lost by a narrow margin. He claims that he lost as a result of the "extreme damage" done to his reputation by Local 170's charges that he illegally received strike benefits. In particular, Fiori points to a six-page letter from Secretary Foley ("the Foley Letter") which described Fiori's "double-dipping" and accused him of stealing from the union. The Foley Letter was distributed to the union's membership on July 15, 1997, a few months before the election.

On September 21, 1997, in response to the Foley Letter, Fiori filed a preelection protest with Local 170 pursuant to Title IV of the LMRDA, 29 U.S.C. §§ 481–83, which was denied. On December 22, 1997, after unsuccessfully appealing that denial within the IBT, Fiori filed a complaint with the Secretary of Labor contesting the validity of the election. After conducting an investigation, the Secretary dismissed Fiori's complaint in its entirety.

Fiori then filed a series of unfair labor practice charges against Local 170 with the National Labor Relations Board ("NLRB"). On August 13, 1998, Administrative Law Judge James L. Rose issued a decision holding that Local 170 and Joint Council 10 had committed an unfair labor practice in violation of § 8(b)(1)(A) of the NLRA, 28 U.S.C. § 158(b)(1)(A), because their findings against Fiori were a pretext to disguise the political motivation for removing him from office. The NLRB ordered Local 170 to, *inter alia*, reinstate Fiori as Vice President, rescind the demand for restitution and cease and desist

from interfering with the right of union members to participate in union politics. Local 170's appeal of that decision is currently pending before the NLRB.

Fiori filed the instant action on August 15, 1997. A few months later, this Court denied Fiori's motion for a preliminary injunction as moot because he had been reinstated as a member and Vice President of Local 170. On July 14, 2000, Fiori filed the Amended Complaint, the following counts of which are relevant here:

1. Count II (Right to Vote), in which Fiori claims that Local 170 violated and continues to violate § 411(a)(1) of Title I of the LMRDA, 29 U.S.C. §§ 411–15, by arbitrarily and discriminatorily denying members the right to vote for the officer of their choice;

2. Count III (Retaliation), in which Fiori claims that Local 170 violated and continues to violate the provisions of § 411(a)(5) of Title I of the LMRDA regarding disciplinary action against union officers by retaliating against him for speaking out against incumbent IBT General President, Ronald Carey; and

3. Count V (Violation of the NLRA), in which Fiori alleges that the aforementioned conduct violated and continues to violate the NLRA and, particularly, that the union had violated state law by slandering his reputation.

## II. *Motion to Dismiss*

Local 170 argues that portions of Counts II and III and all of Count V of the Amended Complaint, should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Rule 12 provides that if matters outside of the pleadings are considered by the court on a Rule 12(b)(6) motion it "shall be treated as one for summary judgment". Accordingly, Local 170 urges that its motion be treated, in the alternative, as a motion for partial summary judgment. Although both parties have submitted extraneous material such as depositions, the thrust of the motion is that this Court lacks subject matter jurisdiction over Fiori's claims 1) under Title I of the LMRDA to the extent that he seeks relief in the form of lost wages, and 2) for violations of the NLRA and slander. Accordingly, Local 170's motion will be treated as a motion to dismiss under Rule 12(b)(1) and application of the summary judgment standard is therefore inappropriate.

## A. Plaintiff's Claim for Lost Wages

In his prayer for relief, Fiori seeks, *inter alia,* lost wages of approximately $100,000 per year that he would have earned had he been elected Business Agent. He claims that he would have won the election but for the damage caused to his reputation by Local 170. Local 170 responds that Fiori's claim for lost wages is barred by Title IV of the LMRDA, 29 U.S.C. §§ 481–483.

The LMRDA regulates the internal affairs of labor unions. "Title I...provides a statutory 'Bill of Rights' for union members, including various protections for members involved in union elections...." *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley,* 467 U.S. 526, 528, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). District courts have jurisdiction over actions alleging violations of Title I. 29 U.S.C. § 412.

Title IV, on the other hand, deals with the election of union officers and "provides an elaborate postelection procedure" to ensure "free and democratic elections". *Crowley,* 467 U.S. at 528, 104 S.Ct. 2557. Enforcement of Title IV rests with the Secretary of Labor ("the Secretary"). 29 U.S.C. § 482. A member of a labor organization who has exhausted all internal union remedies, may file a complaint with the Secretary challenging the validity of an election. 29 U.S.C. § 482(a). If the Secretary finds reasonable cause to believe that there has been a violation of Title IV, the Secretary may bring a civil action in

the district court for the district in which the offending labor organization maintains its principal office to invalidate the election if it has already been held and to direct the conduct of a new election. 29 U.S.C. § 482(b). This is the exclusive remedy for protecting Title IV rights. 29 U.S.C. § 483; *Crowley,* 467 U.S. at 540, 104 S.Ct. 2557 (*citing Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964)).

■ The United States Supreme Court has recognized a substantial overlap between Title I and Title IV and their separate enforcement mechanisms, especially in light of the "exclusivity provision" in § 483 of Title IV. *Crowley,* 467 U.S. at 538–40, 104 S.Ct. 2557. The Court has resolved that overlap as follows:

> First, the exclusivity provision included in...Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed. Second, the full panoply of Title I rights is available to individual union members "prior to the conduct" of a union election.

*Id.* at 541, 104 S.Ct. 2557. Accordingly, if a lawsuit alleges Title I violations, but is, in effect, a Title IV suit, the exclusivity provision bars district court jurisdiction over the action. *Bradley v. American Postal Workers Union,* 962 F.2d 800, 802 (8th Cir.1992).

Citing *Crowley* and *Bradley,* Local 170 argues that because Fiori's claim for lost wages flows directly from his loss of the election for Business Agent, Fiori is improperly using Title I, instead of Title IV, to challenge the validity of an election *after* it has been conducted. Local 170 thus contends that only the Secretary, not this Court, has jurisdiction over the lost wages component of Fiori's Title I claims once they are properly recast as Title IV claims.

■ The Court rejects that argument. Fiori's Title I claims are simply not disguised Title IV claims. Local 170 ignores

a significant footnote to the *Crowley* case in which the Supreme Court noted that

> [t]he exclusivity provision of Title IV may not bar postelection relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted.

*Crowley,* 467 U.S. at 541 n. 16, 104 S.Ct. 2557.; *see also Amalgamated Clothing Workers of America Rank and File Committee v. Amalgamated Clothing Workers,* 473 F.2d 1303, 1305–06 (3d Cir.1973)(postelection Title I suit permissible where "relief relative to the completed election" is not sought).

Fiori's Title I claims attack the procedure by which Local 170 disciplined him and the effect of that discipline coupled with the Foley Letter on the rights of Local 170's members to vote for the candidate of their choice. Count II (Right to Vote) and Count III (Retaliation) each clearly proceed under a specific section of Title I. Fiori does not seek to have the election for Business Agent declared invalid and overturned and thus he is not directly challenging the validity of that election. Rather, his request for lost wages is a part of the damages he claims to have suffered as a result of the alleged Title I violations. Whether the impugning of Fiori's reputation by Local 170 proximately caused him to lose the election for Business Agent and thus the salary for that position is a question of causation of damages under Title I. Title IV is not implicated.

Moreover, Fiori pursued the remedies available to him under Title IV when he filed a complaint challenging the validity of the election for Business Agent with the Secretary on December 22, 1997. The Secretary dismissed that complaint after failing to find probable cause to believe that a violation of Title IV had occurred. The Secretary also noted that Title IV only governs the election of "officers" as defined by the LMRDA, 29 U.S.C. § 402(n). Because the position of Business Agent is not included in the definition

of "officer", the Secretary concluded that even if probable cause existed to suspect a Title IV violation, he "would be precluded from asserting jurisdiction over the selection of business agents and from filing a lawsuit to set aside that selection process." Secretary's Statement of Reasons Dismissing the Complaint of James Fiori, Defendant's Exhibit 28.

■■■ When the Secretary determines that a particular union office is not covered by Title IV, the exclusivity provision of Title IV does not apply, and a plaintiff's Title I claims are therefore not precluded. *Knisley v. Teamsters Local 654,* 844 F.2d 387, 391 (6th Cir.1988)(plaintiff's Title I claims regarding election for position of Business Agent not precluded by exclusivity provision of Title IV where Secretary had determined that Title IV does not cover elections for that office). Accordingly, Title IV does not govern elections for the position of Business Agent and even if Fiori's Title I claims challenged the validity of such an election, they would not be precluded by the exclusivity provision of Title IV. This Court therefore has subject matter jurisdiction over Fiori's Title I claims pursuant to § 412 of the LMRDA.

### B. Count V of the Amended Complaint

In Count V of the Amended Complaint Fiori claims that Local 170 violated and continues to violate the NLRA without citing any specific sections thereof. He also claims that Local 170 has slandered his reputation, thus subjecting him to ridicule within the union and causing him to lose the election for Business Agent.

Local 170 responds that this Court does not have jurisdiction over the NLRA and slander claims because they are preempted by the NLRA and therefore can be entertained only by the NLRB. Furthermore, Local 170 claims that the decision of Administrative Law Judge Rose is *res judicata* in the instant federal case. The Court considers Fiori's NLRA and slander claims *seriatim.*

#### 1. *NLRA Violations*

Fiori responds to the preemption argument with respect to his NLRA claims by contending that he included those claims in the Amended Complaint simply as "some evidence" that the conduct of Local 170 gives rise to a claim under Title I of the LMRDA. He concedes that he

> is not asking this Court to make a finding on whether the Local's conduct violates the NLRA, . . . . he is simply asking this Court to determine whether this particular violation also amounts to a violation of Title I.

Plaintiff's Memorandum in Support of His Opposition to Defendant's Motion to Dismiss at 18.

Fiori apparently wants to use Judge Rose's finding that Local 170 committed an unfair labor practice as evidence in support of his Title I claims. He does not seek relief under the NLRA and therefore is not making a substantive NLRA claim. This Court will, accordingly, dismiss Count V to the extent that it alleges violations of the NLRA.

#### 2. *Slander Claim*

In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that the NLRA precludes state courts from awarding damages under state law for acts arguably constituting an unfair labor practice under §§ 7 and 8 of the NLRA, 29 U.S.C. §§ 157–158:

> When it is clear or may be fairly assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.

*Id.* at 244, 79 S.Ct. 773. Accordingly, when state law claims arise from activity that is arguably regulated by § 7 or § 8 of

the NLRA, both state and federal courts "must defer to the exclusive jurisdiction of the NLRB if the danger of state interference with national labor policy is to be averted." *Chaulk Serv., Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, 1364 (1st Cir.1995).

There are, however, three generally recognized exceptions to the primary jurisdiction of the NLRB. *Tamburello v. Comm–Tract Corp.*, 67 F.3d 973, 977 (1st Cir. 1995). The first occurs where Congress has expressly carved out an exception to that jurisdiction. *Vaca v. Sipes*, 386 U.S. 171, 179–80, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The second applies when the regulated activity touches

> interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [courts] could not infer that Congress had deprived the States of the power to act.

*Garmon*, 359 U.S. at 244, 79 S.Ct. 773. And the third exception holds that preemption of state law claims may be inappropriate where the conduct at issue is "a merely peripheral concern" of federal labor law. *Id.* 243, 79 S.Ct. 773.

Fiori contends that his slander claim (which, in fact, alleges libel) falls under the third exception, relying on *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). In *Linn*, the Supreme Court held that an action for libel within the context of a labor dispute was not subject to the exclusive jurisdiction of the NLRB provided that the plaintiff pled and proved that the alleged defamatory statements were circulated with malice and caused him injury. *Id.* at 55, 86 S.Ct. 657. The Court recognized that a defamatory statement made by a union might constitute an unfair labor practice under the NLRA due only to the coercive or misleading nature of that statement, not to its defamatory quality and consequent injury to an individual's reputation. *Id.* at 63, 86 S.Ct. 657. Because such injury is irrelevant to the NLRB's function, state law must be allowed to address the defamatory nature of libelous statements. *Id.* at 63–64, 86 S.Ct. 657.

Local 170 responds by arguing that the *Linn* exception is limited to libelous statements made during a "labor organizing campaign", i.e. a union's attempt to unionize a specific labor unit, and thus does not apply to defamatory statements made with respect to internal union elections. Although *Linn* did involve a labor organizing campaign, courts within the First Circuit have not read the case so narrowly. *See e.g., Naitram v. Local 2222 of International Bhd. of Elec. Workers*, 982 F.Supp. 83, 87 (D.Mass.1997) (citing *Linn* in holding that the NLRA does not preempt state law defamation claims based on malicious and false statements made by defendant union members outside of organizing campaign context); *Gould v. Graphic Communications Intern. Union Local 103*, 1993 WL 499757, *4 (D.Mass.)(NLRA does not preempt state law defamation claim by union member allegedly denied full strike benefits).

■ Fiori has satisfied the *Linn* standard. He alleges slander even though he relies on the Foley Letter in support of that claim. In any event, slander is simply the oral version of libel and Fiori claims that Local 170's conduct was done with malice and resulted in specific injury, namely the loss of wages in the amount of $100,000 that he would have earned as Business Agent. Accordingly, his slander claim is not preempted by the NLRA.

■ Moreover, the 1998 NLRB decision in Fiori's favor is not *res judicata* as to his slander claim. Judge Rose held only that Local 170 and Joint Council 10 violated § 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A), by improperly disciplining Fiori on the basis of union politics. The decision did not address the allegedly defamatory aspects or consequences of that discipline or the Foley Letter itself, which together form the basis for Fiori's slander claim.

## ORDER

For the reasons set forth in the Memorandum above, the Defendant's motion to dismiss (Docket No. 28) is:

1) to the extent that Plaintiff seeks lost wages as relief for his claims under Title I of the Labor–Management Reporting and Disclosure Act (Counts II and III), DENIED;

2) with respect to Plaintiff's claim under the National Labor Relations Act (Count V), ALLOWED; and

3) with respect to Plaintiff's claim of slander (Count V), DENIED.

So ordered.