Hess NAITRAM, Plaintiff,

v.

**LOCAL 2222 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al., Defendants.**

No. CIV. A. 97–11811–EFH.

United States District Court,
D. Massachusetts.

Nov. 10, 1997.

**84**

Sharen Litwin, Patricia J. Meunier, Kotin, Crabtree & Strong, Boston, MA, for Plaintiff.

John F. Welsh, III, Marie H. Bowen, Testa, Hurwitz & Thibeault, Harold L. Litchten, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Plaintiff, Hess Naitram, a supervisor of operator services at NYNEX, filed this action in Massachusetts Superior Court alleging state law claims that the defendants subjected him to harassment and discrimination based upon his race, color, sex and national origin. The Defendants, Local 2222 and Local 2313 of the International Brotherhood of the Electrical Workers, Local 2222's Business Agent Linda Harrison, NYNEX employee Karen Iantosca, and individual NYNEX employees and union members Carole Fitzgerald, Business Representative of Local 2313, Midge Bears, Shop Steward of Local 2222, and Linda Dwyer, Shop Steward of Local 2313, removed this action to this Court pursuant to 28 U.S.C. § 1441(b) and filed a Motion to Dismiss on the ground that plaintiff's state law claims are preempted under Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 and under Sections 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* Plaintiff filed a Motion to Remand to state court for lack of subject matter jurisdiction. This matter is presently before the Court on both of these motions, and they will be dealt with together since the principal issue in deciding both is whether the plaintiff's state law claims are preempted by federal law.

### I. STATEMENT OF FACTS

Plaintiff's state law claims arise from the statements and conduct of individual defendants and their local unions while he served as supervisor of operator services in the Malden and Weymouth offices of NYNEX. From May, 1993 to January 9, 1995, Naitram supervised members of the Local 2222 bargaining unit in the Malden office. Local 2222 represents NYNEX telephone operators in Malden. Linda Harrison served as Business Agent of Local 2222 and Midge Bears was a NYNEX employee and the Shop Steward for Local 2222. In July, 1994, Linda Harrison complained to a NYNEX manager that plaintiff favored pretty young female operators over other operators. On September 29, 1995, Karen Iantosca, a NYNEX employee, complained to management that plaintiff harassed her, her daughter, and other operators. NYNEX attempted to investigate Iantosca's charges but she refused to cooperate in the investigation. Based upon these alle-

gations, in December, 1995, Local 2222 filed charges against plaintiff on behalf of the union alleging sexual harassment.

On January 9, 1995 plaintiff was transferred to the Weymouth office. Local 2313 represents NYNEX telephone operators in Weymouth. Plaintiff's complaint alleges that Linda Dwyer, Shop Steward of Local 2313, stated to another worker "I don't like that guy [Naitram]. I am going to get him out of here." On April 21, 1995, Dwyer, Carole Fitzgerald and other Local 2313 representatives accused plaintiff of sexual harassing employees in the Weymouth NYNEX office. After the charges in the Weymouth office had been dismissed, but while the charges in Malden were still pending, in January, 1996, Dwyer made racially discriminatory statements regarding plaintiff and his conduct towards women during a training session.

Count I of the complaint alleges employment discrimination in violation of Massachusetts General Laws, Ch. 151B against Local 2222, Local 2313, Linda Dwyer, Linda Harrison, Carole Fitzgerald, and Midge Bears. Plaintiff alleges that as the only black male manager and only manager born outside of the United States in either NYNEX's Weymouth or Malden offices, the defendants denied him the same employment opportunities and the same discrimination-free environment that was offered to white female employees born in the United States. The defendants allegedly subjected Naitram to harassment and created a hostile work place environment by falsely accusing him of sexual harassment and spreading false and defamatory statements about him.

Count II of the complaint alleges that all of the defendants communicated false and defamatory statements of sexual harassment to third parties including other NYNEX employees, NYNEX management, and the independent investigator Beville May. The complaint alleges that the defamatory statements were made in bad faith and for the purpose of securing his discharge from NYNEX.

Count III alleges that all of the defendants engaged in tortious interference with his contractual relations.

Count IV alleges that all of the defendants intentionally caused him emotional distress by making false statements and filing sexual harassment complaints.

Count V alleges that all of the defendants negligently caused him emotional distress by making false statements and filing sexual harassment charges. Plaintiff seeks damages for humiliation, harm to reputation, physical and emotional distress and interference with his employment.

NYNEX hired an independent attorney to investigate the charges against plaintiff in the Malden and Weymouth offices. On June 17, 1996, NYNEX's investigator completed a written report clearing plaintiff of all charges of sexual harassment in the Malden office.

A second written report of the investigator, dated August 26, 1996, concluded that Dwyer and Local 2313 falsely charged plaintiff with sexual harassment of Weymouth telephone operators in order to "carry out her goal of getting rid of Naitram," and that Dwyer disparaged plaintiff at a training session. The report contained the following findings:

[Dwyer's] dislike [of Naitram] also appears to have been fueled by racial animosity given [Dwyer's] remarks about "poor [Redacted]," and her expressed view that it was understandable he would be upset with his ex-wife for seeing someone a black man (sic) . . .

I do conclude, however, that the union either allowed itself to act as [Dwyer's] weapon against [Naitram], or it actively endorsed the project to disparage him and achieve his dismissal . . .

[Dwyer] and other officers of Local 2313 intentionally distorted rumors and hearsay, and transmogrified them into allegedly bona fide sexual harassment charges of a serious nature against [Naitram]. Based on these largely fabricated charges, they demanded his dismissal from NYNEX.

[Dwyer] also disparaged and demeaned [Naitram] and [Mosel] in a NYNEX training session. She either outright lied or avoided telling the truth about this class session when questioned under oath.

On June 14, 1996, plaintiff filed a complaint against the defendants with the Massachusetts Commission Against Discrimination.

## II. ANALYSIS

### A. Section 301 of LMRA Preemption

■ The threshold question presented in this case is whether an employee, who is neither a union member nor a member of the bargaining unit covered by a collective bargaining agreement, may have his state law claims preempted under Section 301 of the LMRA. State law claims are preempted by Section 301 of the LMRA where their resolution requires an interpretation of a collective bargaining agreement. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988). In *Allis–Chalmers v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1977), the Supreme Court enunciated the test for Section 301 preemption of a tort claim as whether the tort "confers nonnegotiable state-law rights on employers and employees independent of any established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with considerations of the terms of the labor contract." The Court made it clear that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301...." *Id.* at 211, 105 S.Ct. at 1911. Preemption is only required "[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract...." *Id.* at 220, 105 S.Ct. at 1916. More recently, the Court of Appeals for the First Circuit stated that preemption requires a real interpretive dispute and not the need merely to refer in passing to the collective bargaining agreement. *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir.1997).

■ The Court will first address the Count II claim for defamation as the majority of plaintiff's claims arise from the alleged false statements of sexual harassment made by the defendants. The Court of Appeals for the First Circuit has not addressed the precise question of whether Section 301 preempts a state law claim of defamation. Defendants argue that statements made in the course of a grievance proceeding are completely preempted. *See Cullen v. E.H. Friedrich Co., Inc.*, 910 F.Supp. 815, 823–24 (D.Mass.1995). The plaintiff in *Cullen* was a union member and was covered under the terms of the collective bargaining agreement. In contrast, plaintiff is not a union member and, as a supervisor, he is not covered under the collective bargaining agreement for telephone operators at issue in this case. Moreover, plaintiff's status as a supervisor distinguishes him from the plaintiff in *Quesnel v. Prudential Insurance Company*, 66 F.3d 8, 11 (1st Cir.1995), who, although not a union member, was a member of the bargaining unit for whose benefit the collective bargaining agreement was created. Furthermore, the defamatory statements at issue in *Cullen* were two letters prepared and distributed by the employer in the context of the grievance proceedings. *Cullen*, 910 F.Supp. at 823. At issue in this case is an alleged pattern of false and malicious statements made by NYNEX employees and union members which is not limited to a specific grievance proceeding. These factors differentiate plaintiff's state law claim from other preemption cases where the central focus is on the terms of the collective bargaining agreement under which the plaintiff was covered.

■ In his complaint plaintiff detailed discriminatory remarks and conduct by the defendants. To the extent that plaintiff's claims are based on allegations that the defendants' conduct and remarks caused him damages, interpretation of the collective bargaining agreement is not required. *Lingle v. Magic Chef*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)(finding that a purely factual inquiry does not turn on the meaning of a collective bargaining agreement). Plaintiff's claim neither asserts rights deriving from the collective bargaining agreement, nor requires interpretation of the agreement's terms. In *Karetnikova v. Trustees of Emerson College*, 725 F.Supp. 73, 79 (D.Mass.1989), the court found that the plaintiff's claim under the Massachusetts Civil Rights Act ("MCRA") did not fall within the scope of Section 301. The court in *Karetnikova* reasoned that, "although the plain-

tiff's MCRA claim may refer to the [collective bargaining agreement] in some respects, it does not substantially depend upon an interpretation of the [same]." *Id.* at 79. As in *Karetnikova,* a decision in this case will depend on a purely factual inquiry into the conduct and motivation of the defendants and not on an interpretation of the collective bargaining agreement.

The analysis for the preemption of the plaintiff's other state law claims is similar to the defamation claim analysis. The merits of these counts will be determined on the facts and will not require an interpretation of a collective bargaining agreement. Thus, the claims are not preempted because their resolution is not "inextricably intertwined" with considerations of the terms of the labor contract.

### B. *Sections 7 and 8 of NLRA Preemption*

■ The defendants also argue that plaintiff's claims are preempted by the exclusive jurisdiction of the National Labor Relations Board ("NLRB") under Sections 7 and 8 of the NLRA. *See* 29 U.S.C. § 151 *et seq.* The Supreme Court held in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959), that when an activity is arguably subject to Section 7 or Section 8 of the NLRA, the states as well as the federal courts must defer to the exclusive competence of the NLRB, if the danger of state interference with national labor policy is to be averted. The Court has recognized exceptions to the *Garmon* rule where the claims have involved conduct that was "merely a peripheral concern of the Labor Management Relations Act ... (or) touched interests so deeply rooted in local feeling and responsibility that, in absence of compelling congressional direction, [the Court] could not infer that Congress had deprived the States of the power to act." *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977).

When called to determine whether these exceptions apply, courts must balance the state's interest in remedying the effects of the challenged conduct against both the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits. *Belknap, Inc. v. Hale,* 463 U.S. 491, 498–99, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983). In the present case plaintiff's complaint does not threaten interference with NLRB's interpretation and enforcement of the integrated scheme of regulation established by the NLRA. Unlike in *Chaulk Services, Inc. v. MCAD,* 70 F.3d 1361, 1365–66 (1st Cir.1995), there is no pending proceeding with the NLRB and plaintiff does not even have standing to file a complaint with the NLRB because he is not a union member.

Moreover, in *Linn v. United Plant Guard Workers,* 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966), the Court held that even in the context of a labor dispute, malicious defamation enjoys no constitutional protection. Similarly, the Court in *Farmer* held that the NLRA does not preempt state court claims for intentional infliction of emotional distress. *Farmer,* 430 U.S. 290, 302–03, 97 S.Ct. 1056, 1064–65, 51 L.Ed.2d 338. The reasoning of *Linn* and *Farmer* support a ruling that plaintiff's claims based on the malicious and false statements of the defendants are not preempted by the NLRA. *See Farmer,* 430 U.S. at 303–05, 97 S.Ct. at 1065–66; *Linn,* 383 U.S. at 63–65, 86 S.Ct. at 663–64.

### III. *CONCLUSION*

■ Plaintiff has alleged that the making of false statements and the malicious filing of false sexual harassment complaints on the part of the defendants have caused him emotional injury and interfered with his contractual relations. These state law claims are not preempted by either the LMRA or NLRA. His pleadings raise material issues of fact that should be determined in the Massachusetts Superior Court. Causes of action created by state law should not be preempted unless *not* to do so would circumvent federal policy. Even members of a union cannot malign a person's reputation with impunity. "He who steals my purse steals trash...."

Plaintiff's Motion to Remand is granted. Defendant's Motion to Dismiss is denied.

SO ORDERED.